UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-199-GWU

WILLIAM K. VERNON,                                                                PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI).  The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity?  If yes, the claimant is not disabled.  If no, proceed to Step 2.  See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Vernon

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

Vernon

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Vernon

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Vernon

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, William K. Vernon, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease of the lumbar spine, spondylolisthesis at L5-S1, low back pain, status post right hip fracture/dislocation and fracture of the right femur due to a motor vehicle accident, and a mood disorder. (Tr. 19). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Vernon retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 22-5). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 41 years, 11th grade education, and past relevant work as a coal miner and carpenter could perform any jobs if he were limited to "light" level exertion, with a need to alternate between sitting and standing approximately every two hours

Vernon

for ten minutes at a time, and also had the following non-exertional restrictions. (Tr. 299). He: (1) would be limited to occasional stooping, bending, kneeling, crouching, and crawling; (2) should avoid extreme cold, extreme heat, hazardous machinery, and vibratory tools and equipment; and (3) would be limited to jobs that did not require detailed instructions, the maintenance of concentration for extended periods, much interaction with the general public, more than a few changes in the work setting, and no constant contact with a supervisor due to a moderate limitation in accepting instructions and responding appropriately to criticisms. (Id.). The VE responded that there would be jobs such as inspecting and assembly, silver wrapper, and surveillance monitor that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 300).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Although the plaintiff had evidence of surgery for a dislocated right hip and fractured right femur (Tr. 97-103) and degenerative disc disease with a disc bulge in the lumbar spine (Tr. 124, 175 ), for which he received treatment at a pain clinic between March, 2003 and April, 2004 (Tr. 142-173), no treating physician listed specific functional capacity limitations, apart from notations that he was to not to

Vernon

drive or operate heavy machinery while taking prescription pain medications (E.g., Tr. 164). The ALJ stated in his decision that he gave the opinions of state agency reviewing physicians considerable weight as they were not inconsistent with other substantial evidence in the record. (Tr. 21). However, both of the state agency reviewers, Dr. Jo Anne Sexton and Dr. J. E. Ross, found that the plaintiff would have a restriction on reaching in all directions, which was not included in the hypothetical question. (Tr. 127-32, 219-24).[1]  The Dictionary of Occupational Titles (DOT) indicates that the job of silver wrapper, Section 318.687-018, involves "constant" reaching, and the job of assembly inspector, Section 706.361-014, involves "frequent" reaching. Therefore, the potential vocational impact of a restriction on reaching clearly needs to be assessed by vocational expert testimony.

While a remand will be required to consider the above issue, the plaintiff has also raised additional points in his brief that merit brief discussion.

First, the plaintiff points out that one of his treating sources, Dr. Cesar Agtarap, provided an opinion dated August 4, 2003 that the "above patient [is]

---

[1] 20 C.F.R. Section 416.927(f) provides that unless the opinion of a treating source is given controlling weight, an ALJ must explain in his decision the weight given to the opinions of state agency consultants. Dr. Sexton noted the plaintiff had complaints of pain in the right shoulder and arm (Tr. 128-9), and a thoracic spine x-ray in October, 2002 showed mild spondylosis of T5-6 (Tr. 118), suggesting that there was at least some objective support for her opinion. Dr. Ross later stated that the initial assessment remained appropriate. (Tr. 223). The ALJ gave no rationale for not accepting their opinion.

Vernon

unable to work indefinitely." (Tr. 120). The plaintiff asserts that the ALJ improperly gave no weight to Dr. Agtarap. The Commissioner responds that the ALJ did note Dr. Agtarap's opinion, but it was given several months prior to the date of Mr. Vernon's SSI application on January 7, 2004 (Tr. 52-5) and, thus, outside the period under consideration. She also notes that malingering was later suggested by one of Dr. Agtarap's colleagues. (Tr. 142). While these are valid points, the ALJ did not discuss any specific rationale for discounting Dr. Agtarap's opinion. (Tr. 18). As the physician was a treating source, it should have been given more than passing notice.

Second, the plaintiff raises the issue of a psychiatric evaluation by Dr. P. D. Patel which found that Mr. Vernon had a mood disorder due to a general medical condition with a current Global Assessment of Functioning (GAF) level of 50. (Tr. 272-4). The ALJ accepted the restrictions given by state agency reviewing psychologists who had not reviewed Dr. Patel's opinion. (Tr. 179-81, 202-4). While a GAF of 50 equates to "serious" symptoms per the <u>Diagnostic and Statistical Manual of Mental Disorders</u>, Dr. Patel's more specific impairment rating under the AMA guidelines indicates that Mr. Vernon would have no more than a Class 3, or moderate, limitation in the area of adaptation and mild or no impairment in activities of daily living, social functioning, and concentration. (TR 274). American Medical Association, <u>Guides to the Evaluation of Permanent Impairment</u> (Fifth Edition, 2001),

Vernon

p. 363. The ALJ could reasonably have relied on the more specific impairment ratings, which were consistent with the state agency reviewers, over the GAF score.

The decision will be remanded for further consideration.

This the 21st day of February, 2007.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**